# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3230
_____

United States of America

*Plaintiff - Appellee*

v.

Lloyd Emerson Elk

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: October 24, 2025
Filed: August 11, 2026
_____

Before L.R. SMITH, KELLY, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

A jury convicted Lloyd Elk on four counts of aggravated sexual abuse of a minor, one count of abusive sexual contact, and one count of tampering with a witness. Elk appeals, arguing the district court[1] erred in denying his motion for

---

[1]The Honorable Camela C. Theeler, United States District Judge for the District of South Dakota.

acquittal for lack of sufficient evidence as to the witness tampering count, abused its discretion in admitting evidence of prior sexual assaults under Federal Rules of Evidence 413 and 414, and imposed a substantively unreasonable sentence. We affirm.

## I. Background

B.L.E. first encountered Elk at four years old when Elk started a romantic relationship with her mother. B.L.E. lived in a house on the Pine Ridge Indian Reservation in Kyle, South Dakota, with her mother and two brothers. Elk also lived in the house at the time.

When B.L.E. was 15 years old, she told her mother, stepfather, and older brother that Elk had sexually abused her when she was younger. B.L.E. described several instances where Elk sexually assaulted her when she was between five and seven years old. B.L.E. testified that Elk would touch her genitals and force her to engage in oral sex and sexual intercourse with him. During the assaults, Elk would cover her mouth, push her to the ground, and hold her down. B.L.E. testified that after Elk assaulted her, he told her he would hurt or kill her, her mother, and her brother, and that he would take her baby brother if she "told anyone" about the abuse. B.L.E. said she did not report the abuse earlier because she was afraid he would hurt her or her family and because Elk told her no one would believe her.

Following B.L.E.'s disclosure, Federal Bureau of Investigation Special Agent Matt Weber became involved in the case and scheduled a forensic interview for B.L.E. with a trained interviewer. Weber attended the forensic interview and later interviewed B.L.E. himself where B.L.E. disclosed that Elk had sexually abused her.

Following an investigation, a federal grand jury indicted Elk with six counts of aggravated sexual abuse of a minor under 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A), (B), and (C); one count of abusive sexual contact with a minor under 18 U.S.C. §§ 1153, 2244(a)(5) and 2236(3); and one count of witness tampering under

18 U.S.C. § 1512(a)(2)(C). Before trial, the government filed a notice of intent to offer evidence of prior sexual assaults committed by Elk under Federal Rules of Evidence 413 and 414. This evidence included testimony from S.F.H., who testified she was also sexually abused by Elk as a child while Elk was married to her aunt. Elk objected to admission of the testimony and moved in limine to exclude it. The district court concluded that S.F.H.'s testimony was admissible because it was relevant and the probative value was not outweighed by the risk of unfair prejudice.

After resting its case, the government moved to dismiss two counts of aggravated sexual abuse of a minor. Elk moved for a judgment of acquittal on each remaining count, and the district court denied his motion. Later that day, the jury returned a guilty verdict on all remaining counts. The district court then sentenced Elk to 600 months of imprisonment on each of the four counts of aggravated sexual abuse of a minor; 60 months of imprisonment on the count of abusive sexual contact with a minor; and 300 months of imprisonment on the witness tampering count, all to run concurrently. Elk appeals.

## II. Analysis

Elk advances three arguments on appeal: (1) the government produced insufficient evidence to convict him of witness tampering; (2) the district court erred by admitting prior bad act testimony under Federal Rules of Evidence 413 and 414; and (3) his below-Guidelines sentence was substantively unreasonable. We address each issue in turn.

### A. Witness Tampering

Elk first challenges the district court's denial of his motion for acquittal on the witness tampering count. We review the denial of a motion for acquittal "*de novo*, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." *United States v. Parker*, 871 F.3d 590, 600 (8th Cir. 2017) (quoting *United States v. Thunder*, 745 F.3d 870, 874 (8th Cir. 2014)).

-3-

We reverse only when "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ways*, 832 F.3d 887, 894 (8th Cir. 2016).

To prove witness tampering under § 1512(a)(2)(C), the government must show the use of "physical force or the threat of physical force against any person, or [an] attempt[] to do so, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . ."

Elk limits his challenge to the federal nexus element — the likelihood that B.L.E.'s report of sexual abuse would have been communicated to a *federal* law enforcement officer. The Supreme Court has defined the standard for this element in the context of interpreting § 1512(a)(1)(C), which criminalizes "kill[ing] or attempt[ing] to kill another person" using the same intent required under § 1512(a)(2)(C). *Fowler v. United States*, 563 U.S. 668, 670 (2011) (quoting 18 U.S.C. § 1512(a)(1)(C); *accord* § 1512(a)(1)(C) (The defendant must "inten[d] to . . . prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .").

In such cases, where the defendant does not have a particular federal law enforcement officer in mind, "the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Fowler*, 563 U.S. at 677. "That is to say, where the defendant" uses physical force as a threat against "a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that . . . at least one of the relevant communications would have been made to a federal officer." *Id.* at 677–78. "The Government need not show that such a communication, had it occurred, would have been federal beyond

-4-

a reasonable doubt, nor even that it is more likely than not." "But it must do more than show the commission of a federal offense; it 'must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.'" *United States v. Mendez*, — F.4th —, No. 25-2127, 2026 WL 2040559, at *3 (8th Cir. Jul. 3, 2026) (quoting *Fowler*, 563 U.S. at 678).

Because the relevant statutory language in § 1512(a)(1)(C) is identical to the language in § 1512(a)(2)(C), we will apply *Fowler*'s standard here. *Mendez*, 2026 WL 2040559, at *3 (applying *Fowler*'s reasonable likelihood standard to § 1512(a)(2)(C)); *see Lobbins v. United States*, 900 F.3d 799, 802 (6th Cir. 2018) (applying *Fowler*'s reasonable likelihood standard to §1512(a)(2)(C) because "absent good reason to do otherwise, we give the same words the same meaning throughout the same statute").

The government here must show, under an objective standard, that if a minor victim of sexual assault in Indian country reports the crime, there must be a reasonable likelihood that the officer who receives the report would be a federal officer. *See Fowler*, 563 U.S. at 677–78. Here, B.L.E. communicated with FBI Special Agent Weber after telling her family about the abuse. Nonetheless, Elk argues the government failed to show a reasonable likelihood that B.L.E. would have communicated the abuse to a federal law enforcement officer because (1) seven-year-olds are unlikely to communicate with federal law enforcement, and (2) she first reported the abuse, years later, to her family members, not to federal law enforcement. Neither argument is compelling. Section 1512(a)(2)(C) says nothing about how much time can elapse before the communication with federal law enforcement. And this makes sense. A substantial delay in reporting abuse, as occurred in this case, may simply show that the abuser's threats were effective. Section 1512(a)(2)(C) likewise does not require a victim to tell a federal law enforcement officer about the abuse before telling anyone else.

"The prospect that federal agents would have contacted [B.L.E.] concerning [Elk's] crimes was by no means 'remote, outlandish, or simply hypothetical.'"

*United States v. Parks*, 179 F.4th 144, 155 (2d Cir. 2026) (quoting *Fowler*, 563 U.S. at 678). The FBI maintains federal jurisdiction over "felony assault," "an assault against an individual who has not attained the age of 16 years," and "felony child abuse" that take place within "Indian country" under The Major Crimes Act. 18 U.S.C. § 1153(a). Further, Elk was investigated and prosecuted for sex abuse crimes under federal law. While not dispositive, this can support a jury's decision to infer a "reasonable likelihood" that a victim under these circumstances would have communicated the abuse to federal law enforcement. *See United States v. Sheffler*, 125 F.4th 814, 824–25 (7th Cir. 2025) (determining that evidence of prompt communication with federal authorities lends some support to the "reasonable likelihood" test); *United States v. Ramos-Cruz*, 667 F.3d 487, 497 (4th Cir. 2012) (noting evidence that the underlying offense was federal in nature can support a jury's reasonable likelihood inference); *United States v. Veliz*, 800 F.3d 63, 74–75 (2d Cir. 2015) (adopting *Ramos-Cruz*'s approach and recognizing "the very fact that communication with federal officials took place . . . lends some support to a finding that the communications were reasonably likely at the time of the [defendant's] solicitations"); *United States v. Strong*, No. 25-1037, 2026 WL 730457, at *2 (7th Cir. Mar. 16, 2026) (stating that evidence of a victim's communication with federal law enforcement may support a jury's reasonable likelihood determination). Given that B.L.E. actually communicated with federal law enforcement, child sex abuse crimes that take place in Indian country are typically prosecuted under federal law, and Elk's underlying offenses were federal in nature, there was "a *reasonable likelihood* that" B.L.E. would make "at least one relevant communication . . . to a federal law enforcement officer." *Fowler*, 563 U.S. at 677.[2]

---

[2]We need not address the nuanced applications of *Fowler* that have been adopted by other circuits because the facts here fit clearly within *Fowler*'s reasonable likelihood test. *See, e.g., Ramos-Cruz*, 667 F.3d at 497–98; *Veliz*, 800 F.3d at 74–75; *Sheffler*, 125 F.4th at 824.

## B. Admission of Rule 413 and 414 Testimony

Elk next argues the district court erred by admitting S.F.H.'s testimony at trial. We review evidentiary rulings for an abuse of discretion, *United States v. Lamm*, 5 F.4th 942, 946 (8th Cir. 2021), and "will reverse 'only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" *United States v. Johnson*, 860 F.3d 1133, 1139 (8th Cir. 2017) (quoting *United States v. Picardi*, 739 F.3d 1118, 1124 (8th Cir. 2014)).

In criminal cases in which a defendant is accused of sexual assault or child molestation, Federal Rules of Evidence 413 and 414 allow the court to admit evidence of other sexual assaults or child molestations committed by the defendant for any relevant matter. "[E]vidence of a prior sexual assault is generally admissible under Rules 414 and 413 'unless its probative value is substantially outweighed by one or more of the factors enumerated in Rule 403, including the danger of unfair prejudice.'" *United States v. Weber*, 987 F.3d 789, 793 (8th Cir. 2021) (quoting *United States v. Keys*, 918 F.3d 982, 986 (8th Cir. 2019)). A limiting instruction decreases this danger. *United States v. Crawford*, 413 F.3d 873, 876 (8th Cir. 2005). "A relevant sexual assault is one committed in a manner similar to the charged offense." *United States v. Crow Eagle*, 705 F.3d 325, 327 (8th Cir. 2013) (quoting *United States v. Rodriguez*, 581 F.3d 775, 796 (8th Cir. 2009)).

Here, S.F.H. testified at trial that she was sexually abused by Elk at her grandparents' house when she was eight years old. At the time, Elk was married to S.F.H.'s aunt and they were all living in the grandparents' house. S.F.H. testified that while she played hide-and-go-seek with her cousins, she hid in a bed in the basement. S.F.H. said Elk then got into the bed with her and sexually assaulted her by touching her genitals and engaging in sexual intercourse. S.F.H.'s testimony mirrored B.L.E.'s testimony about the charged offenses. *See United States v. Gabe*, 237 F.3d 954, 959–60 (8th Cir. 2001) (affirming the admission of a woman's testimony that the defendant sexually abused her 20 years prior because she was a similar age to the victim when the abuse occurred, was also related to the defendant,

and the sexual nature of the abuse was similar). S.F.H. testified she was about the same age as B.L.E. when she was abused by Elk and, like B.L.E., Elk had access to S.F.H. through a familial relationship. S.F.H. also testified that Elk used force against her by holding her down to overpower her before sexually assaulting her. Given these similarities, S.F.H.'s testimony is relevant and probative.

Elk argues S.F.H.'s testimony is unfairly prejudicial because the abuse occurred 25 years before the trial and he was not charged with or convicted of the alleged conduct. *See* Fed. R. Evid. 403. Neither argument is enough to render the testimony unfairly prejudicial. *See Gabe*, 237 F.3d at 960 (rejecting the argument that a significant lapse in time between the conduct and the testimony renders the testimony unfairly prejudicial); *see United States v. Sanchez*, 42 F.4th 970, 975–76 (8th Cir. 2022) (determining testimony describing uncharged conduct that was similar to the charged conduct was highly probative of the defendant's propensity to molest young girls and was not unfairly prejudicial). Further, the district court's limiting instruction mitigated the risk of unfair prejudice. *See id.* at 976. Because the probative value of S.F.H.'s testimony was not substantially outweighed by the risk of unfair prejudice, the district court did not abuse its discretion.

## C. Sentence

Elk next challenges the substantive reasonableness of his sentence. We review the substantive reasonableness of a district court's sentence for an abuse of discretion. *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008). We give lower courts "wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009).

Elk argues the district court improperly weighed the § 3553(a) sentencing factors. Elk's Guidelines range was life imprisonment, with a 30-year mandatory minimum sentence for the counts of aggravated sexual abuse of a minor who has not attained the age of 12. *See* 18 U.S.C. § 2241(c). The district court considered Elk's

mitigating factors, including his service as a veteran, upbringing, alcohol abuse, and PTSD. Because the district court considered the proper § 3553(a) factors when imposing its below-Guidelines sentence, his 600-month sentence is not substantively unreasonable. *See United States v. Bevins*, 848 F.3d 835, 841 (8th Cir. 2017) (stating it is "nearly inconceivable" for a below-Guidelines sentence to be substantively unreasonable).

## III. Conclusion

For these reasons, we affirm.

_____